Jefferson T. Collins, Bar #016428
Jennifer M. Martin, Bar #037594
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-7359
Fax: (602) 200-7825
jcollins@jshfirm.com
jmartin@jshfirm.com

Leah C. Janus (pro hac vice)
Natasha T. Robinson (pro hac vice)
Mattison M. Kim (pro hac vice)
FREDRIKSON & BYRON, P.A.
60 South Sixth Street
Suite 1500
Minneapolis, MN 55402-4400
Telephone: (612) 492-7000
ljanus@fredlaw.com
nrobinson@fredlaw.com
mkim@fredlaw.com

Attorneys for Defendant Target Corporation

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kiloh Smith, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Target Corporation,<br><br>Defendant. | No. 2:24-cv-01048-ROS<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant Target Corporation ("Target") moves to dismiss Plaintiff Kiloh Smith's Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

This is one of at least a dozen nearly identical lawsuits filed in Arizona and several other states seeking to exploit a narrow Arizona statute that applies to telephone service records. Specifically, Plaintiff seeks relief under the Arizona Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 et seq. (the "Statute"), claiming that Target violated that Statute by using pixels embedded in emails from Target to Plaintiff ("email pixels") to obtain information regarding Plaintiff's interactions with the very emails he signed up to receive from Target, such as when Target's emails are opened and whether links are clicked. This technology is so ubiquitous that nearly every email service offers it. By bringing this lawsuit, Plaintiff attempts to expand the scope of the Statute well beyond its terms and intended application.

As a threshold matter, Plaintiff's Complaint must be dismissed because Plaintiff fails to establish this Court's personal jurisdiction over Target. Target's operation of brick-and-mortar stores in Arizona does not relate in any way to Plaintiff's claims—Plaintiff's claims relate to emails Plaintiff signed up to receive, not Target's stores. Plaintiff's bare allegations and failure to provide factual support fall short of its burden to establish that this Court has personal jurisdiction over Target.

In addition, Plaintiff's Complaint must be dismissed because Plaintiff has failed to allege facts sufficient to show that he has the requisite Article III standing. By merely alleging in two conclusory paragraphs that Target invaded Plaintiff's privacy, Plaintiff has failed to meet his burden to demonstrate that he suffered a concrete injury.[1]

Finally, even if this Court had personal jurisdiction over Target and Plaintiff had standing, Plaintiff fails to allege facts sufficient to state a claim under the Statute. Neither the plain language of the Statute, nor the legislative history, support Plaintiff's claim because the Statute simply does not apply here. Target is not a communication service

---

[1] As set forth below (*infra* at 8-9), the United States District Court for the Eastern District of Pennsylvania recently dismissed a virtually identical claim asserted under the Statute on the ground that the plaintiff lacked standing. *Hartley v. Urban Outfitters, Inc.*, No. CV 23-4891, 2024 WL 3445004 (E.D. Pa. July 17, 2024).

provider, Target did not procure any communication service record, and Plaintiff does not allege that he is a customer under the Statute. Accordingly, Target requests that Plaintiff's Complaint be dismissed in its entirety.[2]

## II. FACTUAL BACKGROUND

Plaintiff commenced this action against Target by filing a putative Class Action Complaint ("Complaint") on May 7, 2024. (Dkt. 1.) Plaintiff states that he is a Target email subscriber and resident of Phoenix, Arizona, and he purports to represent "persons in the State of Arizona" who are also subscribed to Target's email list. (*Id.* at ¶¶ 1-3, 7.) Plaintiff alleges that he "frequently opened emails from [Target] to review promotional materials" between August 2020 and April 2024. (*Id.* at ¶ 8.)

The Complaint asserts one count under the Statute. Plaintiff claims that the emails he agreed to receive from Target contain email pixels that "capture and log" information such as when, where, and for how long subscribers open Target emails, whether and to whom Target's email was forwarded by subscribers, and subscribers' email client type, IP address, and device information. (*Id.* at ¶¶ 4, 36-37.) Plaintiff alleges that, "[t]hrough Adobe, Defendant uses the spy pixel to track the reception of messages and the activation of the links inserted in the message content to better understand the behavior of recipients and create tracking logs of recipient activity." (*Id.* at ¶ 39 (internal quotation marks omitted).) Plaintiff alleges the information collected constitutes "communication services records" under the Statute. (*Id.* at ¶¶ 56-58.) Plaintiff claims that the use of email pixels "invaded Plaintiff and Class members' right to privacy" and "intruded upon their seclusion." (*Id.* at ¶ 60.)

---

[2] Target reserves the right to compel Plaintiff's claims to binding arbitration pursuant to his agreement to Target's Terms and Conditions, which contain a binding arbitration clause, as well as to enforce its arbitration rights as to any putative absent class member in this action.

## III. LEGAL ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Target.

Plaintiff bears the burden of proving that this Court has personal jurisdiction over Target. Because Plaintiff has not shown that Target purposefully directed the activities at issue to the State of Arizona, or that any of Target's Arizona-directed activities form the basis of Plaintiff's claims, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction.

#### 1. Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. "[T]he plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). Personal jurisdiction is determined by the actions of the defendant, rather than actions of the plaintiff. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). There are two categories of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014). General jurisdiction is appropriate only "when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021). This is typically only the case where a corporate defendant is incorporated and where it maintains its principal place of business. *See Daimler*, 571 U.S. at 137.

On the other hand, specific jurisdiction permits the court to exercise jurisdiction over a defendant who has availed itself through forum-related activities that gave rise to the action before the court. *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled on other grounds in part by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). The Ninth Circuit requires that the plaintiff show that the non-resident defendant purposefully directed its activities at the forum and that the plaintiff's claim arises out of the non-resident defendant's forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). When analyzing the first prong—whether a defendant purposefully directed its

activities at the forum state—courts in the Ninth Circuit apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* "effects" test asks whether the Defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. All three parts of the test must be satisfied." *Schwarzenegger*, 374 F.3d at 805 (citation omitted).

**2. Plaintiff Has Failed to Establish this Court's Personal Jurisdiction Over Target.**

Plaintiff acknowledges that Target "is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota" and does not appear to assert that this Court has general personal jurisdiction over Target. (Compl. ¶ 12.) Plaintiff alleges that this Court has specific personal jurisdiction over Target: "The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District." (*Id.* at ¶ 14.) Plaintiff also asserts that Target "owns and operates 20 Target stores in the State of Arizona." (*Id.* at ¶ 12.).

Plaintiff's bare, conclusory jurisdictional allegations are insufficient to meet its burden to establish the Court's specific personal jurisdiction over Target. Most notably, Plaintiff has failed to establish that Target purposefully directed its conduct—here, its emails to customers—at Arizona. First, instead of pleading Target's ***purposeful direction***, Plaintiff pleads that Target "***purposefully availed*** itself of the laws" of Arizona. (*Id.* at ¶ 14 (emphasis added).) As the Ninth Circuit has noted, purposeful availment and purposeful direction are two distinct concepts—the former being applied to claims sounding in contract and the latter being applied to non-contractual claims such as Plaintiff's. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

Further, even if Plaintiff had properly pled Target's purposeful direction, Plaintiff must still show that Target expressly aimed its suit-related conduct at the State of Arizona. *See Schwarzenegger*, 374 F.3d at 805. Plaintiff makes no effort to do this. First, while

Plaintiff asserts that Target operates brick-and-mortar stores in the State of Arizona, this is insufficient to establish specific personal jurisdiction because Plaintiff's claims—which relate to emails sent from Target to Plaintiff—do not arise out of or relate in any way to Target's operation of physical stores in the State of Arizona. *See Schwarzenegger*, 374 F.3d at 802 (holding that specific personal jurisdiction requires that the plaintiff's claims arise out of the defendant's forum-related activities).

Second, the transmission of emails from Target to Plaintiff is insufficient to establish that Target has expressly aimed its conduct towards the State of Arizona. The fact that Plaintiff himself initiated Target's email contact with Plaintiff by becoming a subscriber to Target's emails demonstrates that Target did not expressly aim any activity to the state of Arizona. *See Walden*, 571 U.S. at 284 (holding that personal jurisdiction is not determined by the plaintiff's actions but by those of the defendant); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("[T]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant *himself* creates with the forum State.") (internal quotation marks omitted).

Third, in the context of internet activity, courts have held that a plaintiff must show a "forum-specific focus" or an individual targeting of the plaintiff. *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693, 217 L. Ed. 2d 389 (2024). Plaintiff has not offered any facts establishing that Target had any Arizona-specific focus in sending emails to Plaintiff or that Target individually targeted Plaintiff—in fact, that Plaintiff receives Target's emails because Plaintiff signed up for an online Target account indicates the opposite.[3] Courts in the Ninth

---

[3] Counsel for Plaintiff has filed at least 6 almost identical lawsuits related to email pixels and alleged violations of the Statute, several of which are filed in the defendant's home state, rendering it puzzling that Plaintiff chose to sue Target in Arizona. *See, e.g.*, *Mills v. Saks.com LLC*, No. 1:23-cv-10638-ER (S.D.N.Y.); *McGee v. Nordstrom Inc.*, No. 2:23-cv-01875-JHC (W.D. Wash.); *Hartley v. Urban Outfitters, Inc.*, No. 2:23-cv-04891-CMR (E.D. Pa.); *Campos v. TJX Companies, Inc.*, No. 1:24-cv-11067-ADB (D. Mass.); *Segovia v. Burlington Coat Factory Warehouse Corp.*, No. 1:24-cv-06730-CPO-MJS (D.N.J.).

Circuit have found that operating a generally accessible website—a marketing tool that is far more interactive than the emails at issue here—is not enough to support specific jurisdiction in cases alleging an invasion of privacy. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 867 (S.D. Cal. 2023).

Because Plaintiff has not met his burden to establish that this Court has personal jurisdiction over Target, the Complaint should be dismissed.

**B. Plaintiff Lacks Article III Standing.**

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside of this limited jurisdiction." *Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III limits the jurisdiction of federal courts to actual case or controversies. *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007). When a court lacks subject matter jurisdiction, dismissal is required. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Here, because Plaintiff has failed to make the threshold showing that he has suffered an injury in fact sufficient to establish Article III standing, this Court does not have subject matter jurisdiction over Plaintiff's claims and this case should be dismissed.

**1. Legal Standard.**

When subject matter jurisdiction is challenged, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Thornhill Pub. Co., Inc. v. General Tel. & Electric Corp.*, 594 F2d. 730, 733 (9th Cir. 1979). Additionally, when the court considers a motion to dismiss for subject matter jurisdiction "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

To establish Article III standing, Plaintiff must demonstrate that he has "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Whitewater Draw Natural Resources Conservation District v. Mayorkas*, 5 F.4th 997, 1012 (9th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Injury in fact is "a constitutional requirement." *Spokeo, Inc. v. Robins*, 578

U.S. 330*,* 338-339 (2016). To satisfy this requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). In addition, to be particularized, an injury must "affect[] the plaintiff in a personal and individual way." *Thomas v. Mundell*, 572 F.3d. 756, 760 (9th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560 n.1); *see also Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (holding that plaintiffs must allege "a personal stake" that is "distinguishable from the general interest of every citizen").

**2. Plaintiff Has Not Sufficiently Alleged a Concrete Injury in Fact.**

Plaintiff has not sufficiently alleged an injury in fact because he has not shown that he has suffered any concrete harm. Plaintiff asserts that Target sent emails using pixels to collect certain information: when, where, and for how long subscribers open Target emails, whether and to whom Target's email was forwarded by subscribers, and subscribers' email client type, IP address, and device information. (Compl. ¶ 9.) However, Plaintiff fails to allege with any level of specificity how such data collection, if true, harms Plaintiff in any manner, let alone in a manner that is concrete. Instead, in just two almost identical paragraphs, Plaintiff offers the conclusory, unsubstantiated statements that Target's "invasive surveillance" and "clandestine collection . . . invaded his privacy and intruded upon his seclusion." (*Id.* at ¶¶ 5, 60.) These bare allegations implicate no sensitive information and thus do not establish a concrete injury in fact.

Plaintiff's allegations that Target violated the Statute are insufficient to establish an injury in fact. Significantly, the United States District Court for the Eastern District of Pennsylvania recently dismissed an almost identical email pixel action for lack of standing. *See Hartley v. Urban Outfitters, Inc.*, No. CV 23-4891, 2024 WL 3445004 (E.D. Pa. July 17, 2024). In that case, the plaintiff alleged that emails from Urban Outfitters contained pixels that tracked the same information alleged to be tracked here, in violation of the same Arizona Statute. *Id.* at *1. The court held that the plaintiff failed to allege a concrete injury because, among other reasons, the information alleged to be collected was "not of the kind in which a party has a reasonable expectation of privacy." *Id.* at *6. For example, data

regarding the plaintiff's interactions with the emails she signed up to receive was "not sufficiently personal to support a concrete injury."." *Id.* at *7. Moreover, the plaintiff failed "to sufficiently allege how she was harmed by Defendant gleaning the type of device, operating system, or email viewing platform she used to read Defendant's emails, and in any event, such details are not comparable to those traditionally contemplated as giving rise to a reasonable privacy interest." *Id.* at *6.

The existence of the Statute "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement . . . ."[4] *Spokeo*, 578 U.S. at 341. The Supreme Court has stated that a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In *Trans Union*, the Supreme Court further clarified that a concrete harm requires more than a mere statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021); *see also Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023) (holding that the unlawful collection and retention of records alone did not give rise to a concrete injury for purposes of standing and noting that, "for Article III purposes, it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; we must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation").

Plaintiff has not alleged any tangible harm, such as a physical or monetary harm. Instead, he merely alleges, without any factual support, that Target caused an intangible harm when it "invaded his privacy and intruded upon his seclusion." (Compl. ¶¶ 5, 60.) In *Spokeo*, the Supreme Court acknowledged that, "[i]n determining whether an intangible harm constitutes injury in fact . . . it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as a basis for a lawsuit in . . . American courts." 578 U.S. at 340-41. Plaintiff's bare allegations that Target "invaded his privacy and intruded upon his seclusion" (Compl. ¶ 5), and that some

---

[4] As set forth below (*infra* at 11-17), the Statute does not apply to Plaintiff's claim as a matter of law.

"industry advocates" have called the use of email pixels an "invasion of privacy" (Compl. ¶ 32), do not sufficiently show that Plaintiff suffered a concrete harm or that any injury was caused by Target's alleged violation of the Statute.

Although courts have recognized the tort of intrusion upon seclusion as an example of an "intangible harm[] [that] can also be concrete," *TransUnion*, 594 U.S. at 725, integral to such claims is an invasion that would be "highly offensive to a reasonable person." *See, e.g.*, *Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1045 (D. Ariz. 2023) (quoting Restatement (Second) of Torts § 652B (1977)). Plaintiff has not shown that Target's alleged "invasion" would be highly offensive to a reasonable person. Nor could he—"[a]s a matter of law . . . digital records reflecting merely the dates and times at which Plaintiff opened promotional emails she signed up to receive, and the length of time she spent reading them, are not sufficiently personal to support a concrete injury." *Hartley*, 2024 WL 3445004, at *7. *Hartley's* holding is consistent with requirements of other Court's that plaintiffs must show that particularly sensitive, private personal information has been collected and that a protectable privacy interest is implicated. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (holding that intercepted data regarding the plaintiff's web browsing activities, such as "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time," did not establish harm similar to intrusion upon seclusion); *Mikulsky*, 682 F. Supp. 3d at 864 (holding that a plaintiff's conclusory allegations regarding the collection of personal information are not sufficient; the information collected must implicate a protectable privacy interest); *Six*, 673 F. Supp. 3d at 1046 (noting that only a "particularly offensive intrusion[]" is "similar in kind to intrusion upon seclusion" and that the "tort generally seeks to guard against invasion of privacy by some form of investigation into [one's] private concerns, as by opening his private and personal mail, searching his safe or wallet, [or] examining his private bank account"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (holding that the plaintiff failed to identify "any

harm to her privacy" because she failed to show collection of "sensitive information . . . that implicates a protectable privacy interest"), *judgment entered*, No. 5:22-CV-01456-SB-SP, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023), *reconsideration denied*, No. 5:22-CV-01456-SB-SP, 2023 WL 4195768 (C.D. Cal. May 18, 2023); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (holding "basic contact information, including one's email address, phone number, or Facebook or Zynga username," or date of birth and account passwords, is "not so private that their revelation would be highly offensive to a reasonable person" and the collection thereof did not establish standing).

The facts stated in the Complaint allege, at most, a benign technical act—a sender receiving little more than a "read receipt" notification—that a reasonable person would rightly consider inoffensive or innocuous. Something more than collecting non-sensitive data regarding Plaintiff's interactions with emails he consented to receive from Target, such as whether an email has been opened and read, or whether links have been clicked, must be alleged for standing to exist. Because Plaintiff has failed to allege facts sufficient to show a concrete injury, Plaintiff lacks standing and the Complaint should be dismissed.

### C. Alternatively, Plaintiff Has Failed to State a Claim Under the Statute.

Even if Plaintiff had standing to bring his claim, dismissal is still warranted because Plaintiff has failed to state a claim upon which relief can be granted under the Statute.

#### 1. Legal Standard.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a claim must allege sufficient facts such that, when accepted as true, a facially plausible claim for relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient; and legal conclusions couched as factual allegations may be disregarded. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). While a Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the nonmoving party," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010), "conclusory allegations of law and unwarranted inferences are insufficient to defeat

a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

**1. The Statute Does Not Apply to the Facts Alleged in the Complaint or to Target.**

There is very little case law interpreting or applying the Statute—and none in the context of civil litigation. Where, as here, the question is one of first impression under Arizona law, Arizona courts look to the legislative history of a statute at issue. *See, e.g.*, *Gila River Indian Cmty. v. Dep't of Child Safety*, 238 Ariz. 531, 534 (Ariz. Ct. App. 2015) (analyzing a statute's legislative history to determine legislative intent in an issue of first impression). The legislative history of the Statute shows that it was never intended to apply here because Target is not a communication service provider, nor did Target procure any communication service record.

The Statute was enacted in 2006 to "prohibit[] the unauthorized sale of ***telephone records***." AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785, 2/16/2006 (emphasis added). The legislative history of the Statute reflects that it "c[a]me about due to the proliferation of internet sites which sell" telephone records. AZ H.R. Comm. Min., 2/15/2006. At the time, there was much discussion concerning whether additional security was needed "to prevent unauthorized disclosure of confidential consumer information that is held by telecommunications companies." AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (2/16/2006); *see also* AZ S.F. Sheet, 2006 Reg. Sess. H.B. 2785, 3/27/2006 (relaying FCC's investigation into "unauthorized procurement and sale of phone records"); AZ H.R. B. Summ. 2006 Reg. Sess. H.B. 2785, 4/24/2006 (highlighting the practice of pretexting whereby data brokers falsely gain access to consumer information by posting as the customer and offering records for sale on the internet).

It was against this backdrop that the Statute was adopted to prohibit these unauthorized sales and to direct "***telecommunications carriers*** to establish reasonable procedures to protect the consumer against such unauthorized disclosure." *Id.* (emphasis added). As enacted in 2006, the Statute prohibited (1) knowingly procuring, attempting to



117373565.1

procure, soliciting, or conspiring with another to procure an Arizona resident's "telephone record" without consent by fraudulent, deceptive or false means, (2) knowingly selling or attempting to sell a "telephone record" without consent, and (3) receiving a "telephone record" by fraudulent, deceptive, or false means. 2006 Ariz. Legis. Serv. Ch. 260 (H.B. 2785) at § 44-1376.01(A)(1)(2)(3). The 2006 Statute also required telephone companies to establish procedures to protect the unauthorized or fraudulent disclosure of telephone records. *Id.* at § 44-1376.01(B). The 2006 Statute defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Id.* at § 44-1376(4). A "telephone company" was defined as any person providing commercial telephone services to a customer. *Id.* at § 44-1376(4).

The Statute was amended in 2007 to expand the prohibition of falsely procuring, selling, or receiving telephone records to include "communication service records" and "public utility records." AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 3/2/2007. The legislative history of this amendment is congruent with the legislative history of the original version: it shows a concern with obtaining confidential phone records and personal information under false pretenses, *i.e.*, pretexting. *Id.* The focus was once again on telecommunications carriers. AZ S.F. Sheet, 2007 Reg. Sess. H.B. 2726, 3/12/2007 and 4/20/2007 (referring to federal laws prohibiting telecommunications carriers from using, disclosing, and permitting access to customer information); AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 4/30/2007 (referring to federal Telephone Records and Privacy Protection Act).

Similar to the original version, the 2007 amendment prohibits (1) knowingly procuring, attempting to procure, soliciting, or conspiring with another to procure an Arizona resident's public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive or false means, (2) knowingly selling or attempting to sell a public utility record, telephone record, or communication service record

without consent, and (3) receiving a public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive, or false means. The Statute has not been further amended since 2007.

Plaintiff's expansive reading of the Statute contradicts the Statute's legislative history and intent. Arizona's legislature enacted the Statute to crack down on unauthorized access to telephone records held by telecommunications carriers. The legislative history does not support an interpretation of the statute that legislators intended the Statute to apply to a retailer alleged to have collected information regarding an email subscriber's interactions with an email sent from the retailer to the subscriber.

**2. The Statute Applies Only to Communication Service Providers.**

The Statute's plain language shows that the Statute applies only to records maintained by communication service providers—not retailers, like Target. The Statute defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record.

AZ ST § 44-1376. That Target is not a communication service provider is made clear by the definition's reference to "the nature of the ***communication service*** provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features." *Id.* (emphasis added). Further, the records included in this definition, such as "installation address" and "length of service" of a subscriber, are the types of information that only a provider of communication services, such as a telephone carrier, would maintain. [5]

---

[5] This reading of the Statute is supported by other statutes governing communication service records, such as the Arizona Eavesdropping and Communication Act ("ECA"). AZ ST § 13-3018. The ECA provides a procedure for criminal prosecutors to subpoena "communication service records." It contains an identical definition of "communication service record," and explains that a prosecutor may obtain a communication service

Plaintiff's construction of the Statute appears to read the word "service" out of the definition of a "communication ***service*** record," in contravention of basic canons of construction. *See BLK III, LLC v. Skelton*, 252 Ariz. 583, 587, 506 P.3d 812, 816 (Ct. App. 2022), *as amended* (Feb. 17, 2022) (noting that "each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant"). Target is not, nor is it alleged to be, a provider of communication services. Accordingly, the Statute does not apply and Plaintiff has failed to state a claim.

**3. Plaintiff Does Not Sufficiently Allege That Target Collected "Communication Service Records."**

Plaintiff alleges that Target procured Plaintiff's "communication service records" by capturing "time logs of email access, logs of associated email addresses, logs of email client type, logs of email path data, logs of recipient location, logs of IP address, logs of email forwarding data, and logs of device information." (Compl. ¶¶ 54-56.) However, the plain language of the Statute does not support this, and no court has interpreted the Statute in the manner Plaintiff does.

The Statute prohibits the procurement of "a public utility record, a telephone record or a communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." AZ ST § 44-1376.01. The definition of "communication service record," as set forth above, does not, on its face, include any of the information described by Plaintiff, nor can such inclusion reasonably be inferred from the plain language of the Statute. As this Court has noted, "[i]t is a canon of statutory construction that words should not be added to or read into a statute." *Ctr. for Biological Diversity v. Norton*, 240 F. Supp. 2d 1090, 1099 (D.

---

record by issuing a subpoena "to a communication service provider," and that such records would be "used and kept by the communication service provider." *Id.* § 13-3018(B), (D)(1). The ECA makes clear that "communication service records" are records held by communication service providers. Accordingly, the same phrase used in the Statute cannot have the much broader meaning Plaintiff seeks. *Maricopa County v. Barkley*, 812 P.2d 1052, 1056 (Ariz. App. 1990).

Ariz. 2003), *amended in part*, No. CV 01-409 TUC DCB, 2003 WL 22849594 (D. Ariz. Feb. 19, 2003).

Because there is no case law interpreting the meaning of "communication service record"—and very little case law applying the Statute generally—case law analyzing the collection of similar information under analogous statutes is helpful. For example, in *Williams v. What If Holdings, LLC*, a defendant was accused of using software "to record [the plaintiff's] keystrokes and clicks on the website, while also recording data regarding the date and time of her visit, her browser and operating system, and her geographic location." No. C 22-03780 WHA, 2022 WL 17869275, at *1 (N.D. Cal. Dec. 22, 2022). The plaintiff asserted that this data collection "violated the wiretapping provision of the California Invasion of Privacy Act," among other laws. *Id.* In dismissing the complaint, the court found that the defendant did not unlawfully intercept a communication because, "[a]s the website owner, What If was the intended recipient of plaintiff's communication. Parties to a conversation cannot eavesdrop on their own conversation[.]" *Id.* at *2. The same result should follow here, where Target is alleged to have captured data regarding Plaintiff's interactions with an email sent ***from Target*** to Plaintiff.

In *In re Nickelodeon Consumer Privacy Litig.*, the Third Circuit affirmed the dismissal of an action where children plaintiffs alleged "that the defendants, Viacom and Google, unlawfully collected personal information about them on the Internet, including what webpages they visited and what videos they watched on Viacom's websites" in violation of the federal Wiretap Act and Video Privacy Protection Act ("VPPA"), among other statutes. 827 F.3d 262, 267 (3d Cir. 2016). As to the Wiretap Act claim, the court agreed with the trial court's finding that no interception occurred because the defendants, like Target, were a party to all communications with the plaintiffs. *Id.* at 274-76. As to the plaintiffs' VPPA claim, the court held that regardless of whether certain static digital identifiers could reveal an individual's video-watching habits, it did "not think that a law from 1988 can be fairly read to incorporate such a contemporary understanding of Internet privacy." *Id.* at 290. The court found that the plaintiff's allegations that Google could

assemble these static identifiers to unmask the identity of children was "simply too hypothetical to support liability under the" VPPA. *Id.*

Here, as in *Nickelodeon*, Plaintiff's Complaint attempts to contort a 2007 telecommunications statute to fit 2024 technology. Arizona's legislature has had seventeen years to amend the Statute to encompass the types of data collection Plaintiff alleges, and it has not. Thus, a plain reading of the text of the Statute, read alongside case law analyzing the collection of similar information, shows that Plaintiff has failed to state a claim under the Statute.

**4. Plaintiff Has Not Pled Facts Showing he is Target's "Customer."**

The Statute's civil cause of action extends only to "a ***customer*** whose communication service records . . . were procured, sold or received in violation of this article." A.R.S. § 44-1376.04(A) (emphasis added). Despite alleging that he subscribed to Target's email list, Plaintiff fails to allege that he is or was a "customer" of Target and does not allege that he bought products from Target. Because the Complaint lacks facts supporting Plaintiff's eligibility to sue under the Statute, the Complaint must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Target respectfully requests that the Court dismiss the Complaint with prejudice.

DATED this 7th day of August 2024.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/ Jefferson T. Collins
Jefferson T. Collins
Jennifer M. Martin
40 N. Central Avenue, Suiter 2700
Phoenix, Arizona 85004

FREDRIKSON & BYRON, P.A.

Leah C. Janus (pro hac vice)
Natasha T. Robinson (pro hac vice)
Mattison M. Kim (pro hac vice)
60 South Sixth Street
Suite 1500
Minneapolis, MN 55402-4400

***Attorneys for Defendant Target Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August 2024, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Kathy Kleinschmidt