Jefferson T. Collins, Bar #016428
Jennifer M. Martin, Bar #037594
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-7359
Fax: (602) 200-7825
jcollins@jshfirm.com
jmartin@jshfirm.com

Leah C. Janus (pro hac vice)
Natasha T. Robinson (pro hac vice)
Mattison M. Kim (pro hac vice)
FREDRIKSON & BYRON, P.A.
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: (612) 492-7000
ljanus@fredlaw.com
nrobinson@fredlaw.com
mkim@fredlaw.com

Attorneys for Defendant Target Corporation

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kiloh Smith, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Target Corporation and Target Stores, Inc.,<br><br>　　　　　　　　　　　Defendants. | No. 2:24-cv-01048-ROS<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |

　　　Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant Target Corporation ("Target")[1] moves to dismiss Plaintiff Kiloh Smith's First

---

[1] As of the date of filing of this Motion, Defendant Target Stores, Inc. has not been served with Plaintiff's First Amended Complaint. If Target Stores, Inc. is properly served in the

117507690.1
117507690.1

Amended Complaint ("Complaint") for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

This is one of at least a dozen nearly identical lawsuits filed in Arizona and several other states seeking to exploit a narrow Arizona statute that applies to telephone service records—several of which have now been dismissed. Plaintiff seeks relief under the Arizona Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 et seq. (the "Statute"), claiming that Target violated that Statute by using pixels embedded in emails from Target to Plaintiff to obtain information regarding Plaintiff's interactions with the very emails he signed up to receive, such as when such emails are opened and whether links are clicked. This technology is so ubiquitous that nearly every email service offers it. By bringing this lawsuit, Plaintiff attempts to expand the scope of the Statute well beyond its terms and intended application.

As a threshold matter, Plaintiff's Complaint must be dismissed because Plaintiff fails to establish this Court's personal jurisdiction over Target. This Court does not have general personal jurisdiction over Target, nor does it have specific personal jurisdiction because Plaintiff has failed to sufficiently allege that Target purposefully directed its suit-related conduct at this forum.

In addition, Plaintiff's Complaint must be dismissed because Plaintiff has failed to allege facts sufficient to show he has the requisite Article III standing. By merely alleging in two conclusory paragraphs that Target invaded Plaintiff's privacy, Plaintiff has failed to meet his burden to demonstrate that he suffered a concrete injury.

Further, Plaintiff fails to allege facts sufficient to state a claim under the Statute. Neither the plain language of the Statute, nor the legislative history, support Plaintiff's claim because the Statute simply does not apply here. Target is not a communication

---

future, Target Stores, Inc. will join in this Motion, as all arguments and defenses applicable to Target Corporation are also applicable to Target Stores, Inc.

2

service provider, Target did not procure any communication service record, and Plaintiff does not allege that he is a customer under the Statute.

Finally, if the Court applies the Statute here, Plaintiff's claim still fails because it is expressly preempted under the federal Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act. Accordingly, Target requests that Plaintiff's Complaint be dismissed in its entirety with prejudice.[2]

## II.     FACTUAL BACKGROUND

Plaintiff commenced this action against Target Corporation by filing a putative Class Action Complaint on May 7, 2024. (Dkt. 1.) After Target moved to dismiss the Complaint, Plaintiff filed a First Amended Complaint. (Dkt. 20.) Despite adding Target Stores, Inc. as a defendant, the First Amended Complaint does not add any facts or allegations connecting Target Stores, Inc. to Plaintiff's claim. Instead, Plaintiff simply defines both Defendants as "Target." (*Id.* ¶ 1.)

Plaintiff states that he is a Target email subscriber and a resident of Phoenix, Arizona, and he purports to represent "persons in the State of Arizona" who are also subscribed to Target's email list. (*Id.* ¶¶ 1-3, 7.) Plaintiff claims that the emails he agreed to receive from Target contain pixels that capture information such as when, where, and for how long subscribers open Target emails, whether and to whom such emails were forwarded by subscribers, and subscribers' email client type, IP address, and device information. (*Id.* ¶¶ 4, 39-40.) Plaintiff claims that the use of email pixels "invaded Plaintiff and Class members' right to privacy" and "intruded upon their seclusion." (*Id.* ¶ 63.)

## III.    LEGAL ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Target.

Plaintiff fails to carry his burden to prove that this Court has personal jurisdiction over Target.

---

[2] Target reserves the right to compel Plaintiff's claims to arbitration pursuant to his agreement to Target's Terms and Conditions, which contain a binding arbitration clause, as well as to enforce its arbitration rights as to any putative absent class member in this action.

3

### 1. Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. "[T]he plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). Personal jurisdiction is determined by the actions of the defendant, rather than actions of the plaintiff. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). There are two categories of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014). General jurisdiction is appropriate only "when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021). This is typically only the case where a corporate defendant is incorporated and where it maintains its principal place of business. *See Daimler*, 571 U.S. at 137.

On the other hand, specific jurisdiction permits the court to exercise jurisdiction over a defendant who has availed itself through forum-related activities that gave rise to the action before the court. *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled on other grounds in part by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). The Ninth Circuit requires that the plaintiff show that the non-resident defendant purposefully directed its activities at the forum and that the plaintiff's claim arises out of the non-resident defendant's forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). When analyzing the first prong—whether a defendant purposefully directed its activities at the forum state—courts in the Ninth Circuit apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* "effects" test asks whether the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. All three parts of the test must be satisfied." *Schwarzenegger*, 374 F.3d at 805 (citation omitted).

### 2. Plaintiff Has Failed to Establish Personal Jurisdiction.

4

With respect to the general personal jurisdiction analysis, Plaintiff acknowledges that Target is a Minnesota corporation with its principal place of business in Minnesota. (Compl. ¶ 11.) Plaintiff does not allege that Target is "essentially at home" in Arizona, as is typically required for this Court to exercise general personal jurisdiction. *See Daimler*, 571 U.S. at 127. Instead, Plaintiff asserts that this Court has "personal jurisdiction"—presumably, general personal jurisdiction—"over Defendants because, pursuant to the Arizona Constitution article XIV, section 8, by filing their articles of incorporation with the Arizona Corporation Commission and by having an authorized agent to accept service, Defendants have consented to accept service of suits that arise in this District." (Compl. ¶ 15.) However, Target's consent to accept service does not confer general personal jurisdiction over Target in Arizona. As this Court has repeatedly noted, the Arizona Court of Appeals has expressly held that "foreign corporations do not impliedly consent to general jurisdiction in Arizona merely by registering as foreign corporations and appointing agents for service of process." *Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357, 359, 395 P.3d 1116, 1118 (Ct. App. 2017); *see also Ramos v. Pierce*, No. CV-22-01956-PHX-DJH, 2023 WL 3246958, at *4 (D. Ariz. May 4, 2023) (holding that the defendants' "appointment of an agent for service of process . . . does not subject them to this Court's jurisdiction" and that the Court must still undertake the ordinary personal jurisdiction analysis); *Ocean Garden Prod. Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-RM, 2019 WL 4736928, at *4 (D. Ariz. Sept. 27, 2019) (citing *Wal-Mart* and finding that the defendant's "act of registering with the Arizona Corporation Commission and appointing an agent for service of process in Arizona" does not constitute "consent to general personal jurisdiction in Arizona"); *Leon v. Peterbilt Motors Co.*, No. CV-18-02122-PHX-ROS, 2019 WL 859580, at *3 (D. Ariz. Feb. 22, 2019) (citing *Wal-Mart* and finding that a foreign corporation's registration was insufficient to confer general personal jurisdiction). Accordingly, this Court does not have general personal jurisdiction over Target.

Nor does Plaintiff sufficiently allege that this Court has specific personal jurisdiction over Target. Plaintiff asserts: "The Court also has personal jurisdiction has

[sic] purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of Defendants' forum-related activities." (Compl. ¶ 16.) But Plaintiff's Complaint is devoid of facts specific to either Defendant sufficient to show that this Court has jurisdiction. Plaintiff fails to specify which Defendant has "purposefully availed itself of the laws and benefits of doing business in" Arizona. (*See id.*) Rather, Plaintiff defines both Defendants collectively as "Target" and alleges that "Target" owns retail stores and distribution centers in Arizona and that "Target sends marketing emails to Plaintiff and Class members to induce them to visit Target stores in Arizona and make digital purchases shipped from Arizona-based Target retail stores and distribution centers." (*Id.* ¶¶ 1, 3, 13.) Plaintiff does not even specify which Defendant sent him emails.

Plaintiff improperly lumps both Defendants together and does not establish each Defendant's connection to this forum. This is insufficient to confer personal jurisdiction over both Defendants. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("[J]urisdiction depends only upon each defendant's relationship with the forum. . . . [J]urisdiction over each defendant must be established individually."); *Peter Strojnik, P.C. v. Signalife, Inc.*, No. CV081116PHXFJM, 2009 WL 605411, at *3 (D. Ariz. Mar. 9, 2009) (noting that "personal jurisdiction must be satisfied as to each individual defendant" and granting a motion to dismiss where a plaintiff made "no separate allegation regarding [an individual defendant's] contacts with Arizona"). Plaintiff's failure to plead specific factual allegations sufficient to confer personal jurisdiction over each Defendant is fatal to its Complaint.

Even if Plaintiff had properly distinguished jurisdictional facts as to each Defendant, Plaintiff has nonetheless failed to establish that Target purposefully directed[3] its suit-related conduct—here, emails to customers—at Arizona. *See Schwarzenegger*, 374 F.3d at 805. First, the transmission of emails from Target to Plaintiff is insufficient to establish

---

[3] Instead of pleading **purposeful direction**, Plaintiff pleads **purposeful availment** of the laws of Arizona. (Compl. ¶ 16.) Purposeful availment and purposeful direction are two distinct concepts—the former applies to contract claims and the latter to non-contractual claims such as Plaintiff's. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

6

that Target expressly aimed its conduct towards the State of Arizona. That Plaintiff himself initiated Target's email contact with Plaintiff by becoming an email subscriber demonstrates that Target did not expressly aim any activity to the state of Arizona. *See Walden*, 571 U.S. at 284 (holding that personal jurisdiction is not determined by the plaintiff's actions but by those of the defendant); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("[T]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant *himself* creates with the forum State.") (internal quotation marks omitted).

Second, in the context of internet activity, courts have held that a plaintiff must show a "forum-specific focus" or an individual targeting of the plaintiff. *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693, 217 L. Ed. 2d 389 (2024). Plaintiff has not offered any facts establishing that Target had any Arizona-specific focus in sending emails to Plaintiff or that Target individually targeted Plaintiff—in fact, that Plaintiff receives emails because Plaintiff signed up for an online Target account indicates the opposite.[4] Further, Courts in the Ninth Circuit have found that operating a generally accessible website—a marketing tool that is far more interactive than the emails at issue here—is not enough to support specific jurisdiction in cases alleging an invasion of privacy. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 867 (S.D. Cal. 2023).

Because Plaintiff has not met his burden to establish that this Court has personal jurisdiction over Target, the Complaint should be dismissed.

**B.    Plaintiff Lacks Article III Standing.**

---

[4] Counsel for Plaintiff has filed at least 8 almost identical lawsuits related to email pixels and alleged violations of the Statute, several of which are filed in the defendant's home state, rendering it puzzling that Plaintiff chose to sue Defendants in Arizona. *See, e.g.*, *Mills v. Saks.com LLC*, No. 1:23-cv-10638-ER (S.D.N.Y.); *McGee v. Nordstrom Inc.*, No. 2:23-cv-01875-JHC (W.D. Wash.); *Hartley v. Urban Outfitters, Inc.*, No. 2:23-cv-04891-CMR (E.D. Pa.); *Campos v. TJX Companies, Inc.*, No. 1:24-cv-11067-ADB (D. Mass.); *Segovia v. Burlington Coat Factory Warehouse Corp.*, No. 1:24-cv-06730-CPO-MJS (D.N.J.).

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside of this limited jurisdiction." *Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III limits the jurisdiction of federal courts to actual case or controversies. *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007). When a court lacks subject matter jurisdiction, dismissal is required. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Here, because Plaintiff has failed to make the threshold showing that he has suffered an injury in fact sufficient to establish Article III standing, this Court does not have subject matter jurisdiction over Plaintiff's claims and this case should be dismissed.

### 1. Legal Standard.

When subject matter jurisdiction is challenged, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Thornhill Pub. Co., Inc. v. General Tel. & Electric Corp.*, 594 F2d. 730, 733 (9th Cir. 1979). Additionally, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

To establish Article III standing, Plaintiff must demonstrate that he has "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Whitewater Draw Natural Resources Conservation District v. Mayorkas*, 5 F.4th 997, 1012 (9th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Injury in fact is "a constitutional requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-339 (2016). To satisfy this requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). In addition, to be particularized, an injury must "affect[] the plaintiff in a personal and individual way." *Thomas v. Mundell*, 572 F.3d. 756, 760 (9th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560 n.1); *see also Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (holding that plaintiffs must allege "a personal stake" that is "distinguishable from the general interest of every citizen").

### 2. Plaintiff Has Not Sufficiently Alleged a Concrete Injury in Fact.

117507690.1
117507690.1

Plaintiff has not sufficiently alleged an injury in fact because he has not shown that he has suffered any concrete harm. Plaintiff asserts that Target sent emails using pixels to collect certain information: when, where, and for how long subscribers open Target's emails, whether and to whom Target's emails were forwarded by subscribers, and subscribers' email client type, IP address, and device information. (Compl. ¶ 9.) However, Plaintiff fails to allege with any level of specificity how such data collection, if true, harms Plaintiff in any manner, let alone in a manner that is concrete. Instead, in just two almost identical paragraphs, Plaintiff offers the conclusory, unsubstantiated statements that Target's "invasive surveillance" and "clandestine collection . . . invaded his privacy and intruded upon his seclusion." (*Id.* ¶¶ 5, 63.) These bare allegations implicate no sensitive information and thus do not establish a concrete injury in fact.

Plaintiff's allegations that Target violated the Statute are insufficient to establish an injury in fact. Significantly, the United States District Court for the Eastern District of Pennsylvania recently dismissed an almost identical email pixel action for lack of standing. *See Hartley v. Urban Outfitters, Inc.*, No. CV 23-4891, 2024 WL 3445004 (E.D. Pa. July 17, 2024). In that case, the plaintiff alleged that emails from Urban Outfitters contained pixels that tracked the same information alleged to be tracked here, in violation of the same Arizona Statute. *Id.* at *1. The court held that the plaintiff failed to allege a concrete injury because, among other reasons, the information alleged to be collected was "not of the kind in which a party has a reasonable expectation of privacy." *Id.* at *6. For example, data regarding the plaintiff's interactions with the emails she signed up to receive was "not sufficiently personal to support a concrete injury."." *Id.* at *7. Moreover, the plaintiff failed "to sufficiently allege how she was harmed by Defendant gleaning the type of device, operating system, or email viewing platform she used to read Defendant's emails, and in any event, such details are not comparable to those traditionally contemplated as giving rise to a reasonable privacy interest." *Id.* at *6.

An alleged violation of the Statute "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement . . . ." *Spokeo*, 578 U.S. at 341. The Supreme Court

117507690.1
117507690.1

has stated that a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In *Trans Union*, the Supreme Court further clarified that a concrete harm requires more than a mere statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021); *see also Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023) (holding that the unlawful collection and retention of records alone did not give rise to a concrete injury and noting that "it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; we must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation").

Plaintiff has not alleged any tangible harm, such as a physical or monetary harm. Instead, he merely alleges, without any factual support, that Target caused an intangible harm when it "invaded his privacy and intruded upon his seclusion." (Compl. ¶¶ 5, 63.) In *Spokeo*, the Supreme Court acknowledged that, "[i]n determining whether an intangible harm constitutes injury in fact . . . it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as a basis for a lawsuit in . . . American courts." 578 U.S. at 340-41. Plaintiff's bare allegations that Target "invaded his privacy and intruded upon his seclusion" (Compl. ¶ 5), and that some "industry advocates" have called the use of email pixels an "invasion of privacy" (Compl. ¶ 35), do not sufficiently show that Plaintiff suffered a concrete harm or that any injury was caused by Target's alleged violation of the Statute.

Although courts have recognized the tort of intrusion upon seclusion as an example of an "intangible harm[] [that] can also be concrete," *TransUnion*, 594 U.S. at 725, integral to such claims is an invasion that would be "highly offensive to a reasonable person." *See, e.g., Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1045 (D. Ariz. 2023) (quoting Restatement (Second) of Torts § 652B (1977)). Plaintiff has not shown that Target's alleged "invasion" would be highly offensive to a reasonable person. Nor could he—"[a]s a matter of law . . . digital records reflecting merely the dates and times at which Plaintiff opened promotional emails she signed up to receive, and the length of time she spent

10

reading them, are not sufficiently personal to support a concrete injury." *Hartley*, 2024 WL 3445004, at *7. *Hartley*'s holding is consistent with those of other courts that plaintiffs must show that particularly sensitive, private personal information has been collected and that a protectable privacy interest is implicated. *See, e.g.*, *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (holding that intercepted data regarding the plaintiff's web browsing activities, such as "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time," did not establish harm similar to intrusion upon seclusion); *Mikulsky*, 682 F. Supp. 3d at 864 (holding that a plaintiff's conclusory allegations regarding the collection of personal information are not sufficient; the information collected must implicate a protectable privacy interest); *Six*, 673 F. Supp. 3d at 1046 (noting that only a "particularly offensive intrusion[]" is "similar in kind to intrusion upon seclusion" and that the "tort generally seeks to guard against invasion of privacy by some form of investigation into [one's] private concerns, as by opening his private and personal mail, searching his safe or wallet, [or] examining his private bank account"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (holding that the plaintiff failed to identify "any harm to her privacy" because she failed to show collection of "sensitive information . . . that implicates a protectable privacy interest"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (holding "basic contact information, including one's email address, phone number, or Facebook or Zynga username," or date of birth and account passwords, is "not so private that their revelation would be highly offensive to a reasonable person" and the collection thereof did not establish standing).

The facts stated in the Complaint allege, at most, a benign technical act—a sender receiving little more than a "read receipt" notification—that a reasonable person would rightly consider inoffensive or innocuous. Something more than collecting non-sensitive data regarding Plaintiff's interactions with emails he consented to receive from Target, such as whether an email has been opened and read, or whether links have been clicked,

117507690.1
117507690.1

must be alleged for standing to exist. Because Plaintiff has failed to allege facts sufficient to show a concrete injury, Plaintiff lacks standing and his Complaint should be dismissed.

### C. Alternatively, Plaintiff Has Failed to State a Claim Under the Statute.

Even if Plaintiff had standing to bring his claim, dismissal is still warranted because Plaintiff has failed to state a claim upon which relief can be granted under the Statute.

#### 1. Legal Standard.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a claim must allege sufficient facts such that, when accepted as true, a facially plausible claim for relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient; and legal conclusions couched as factual allegations may be disregarded. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

#### 2. The Complaint Fails to Allege Specific Facts Regarding Each Defendant.

Plaintiff's claims fail because the Complaint lacks specific factual allegations connecting each Defendant to the statutory violation alleged. Plaintiff cannot simply define both Defendants as "Target" and fail to detail the specific conduct of each Defendant. *See Soliz v. Haley*, No. CV09-1555-PHX-JATECV, 2010 WL 1337935, at *2 (D. Ariz. Apr. 2, 2010) ("[P]laintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant . . . . [C]onclusory allegations against Defendants as a group are insufficient to state a claim."); *see also Nat'l Ass'n for Advancement of Multijurisdiction Prac. v. Berch*, 973 F. Supp. 2d 1082, 1103 (D. Ariz. 2013) (requiring a complaint to specify "what role each Defendant played in the described conduct and how each Defendant caused . . . the alleged harm"), *aff'd sub nom. Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Berch*, 773 F.3d 1037 (9th Cir. 2014). Plaintiff's Complaint thus fails to state a claim against each Defendant and should be dismissed.

#### 3. The Statute Does Not Apply to the Facts Alleged in the Complaint or to Target.

There is little case law applying the Statute; none in the context of civil litigation. Where a question is one of first impression under Arizona law, Arizona courts look to the legislative history of a statute at issue. *See, e.g.*, *Gila River Indian Cmty. v. Dep't of Child Safety*, 238 Ariz. 531, 534 (Ariz. Ct. App. 2015). The legislative history of the Statute shows that it was never intended to apply here because Target is not a communication service provider, nor did Target procure any communication service record.

The Statute was enacted in 2006 to "prohibit[] the unauthorized sale of ***telephone records***," AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785, 2/16/2006 (emphasis added), and to direct "***telecommunications carriers*** to establish reasonable procedures to protect the consumer against such unauthorized disclosure." AZ H.R. Comm. Min., 2/15/2006 (emphasis added). The 2006 Statute defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Id.* at § 44-1376(4).

The Statute was amended in 2007 to expand the prohibition of falsely procuring, selling, or receiving telephone records to include "communication service records" and "public utility records." AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 3/2/2007. The amendment is congruent with the legislative history of the original version: it shows a concern with obtaining confidential phone records and personal information under false pretenses, *i.e.*, pretexting. *Id.* The focus was once again on telecommunications carriers. AZ S.F. Sheet, 2007 Reg. Sess. H.B. 2726, 3/12/2007 and 4/20/2007 (referring to federal laws prohibiting telecommunications carriers from using, disclosing, and permitting access to customer information); AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 4/30/2007 (referring to federal Telephone Records and Privacy Protection Act).

Similar to the original version, the 2007 amendment prohibits (1) knowingly procuring, attempting to procure, soliciting, or conspiring with another to procure an Arizona resident's public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive or false means, (2) knowingly selling or

13

attempting to sell a public utility record, telephone record, or communication service record without consent, and (3) receiving a public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive, or false means. The Statute has not been further amended since 2007.

Plaintiff's expansive reading of the Statute contradicts the Statute's legislative history and intent. Arizona's legislature enacted the Statute to crack down on unauthorized access to telephone records held by telecommunications carriers. The legislative history does not support applying the Statute to a retailer alleged to have collected information regarding an email subscriber's interactions with emails sent from the retailer to the subscriber at his request.

### 4.     The Statute Applies Only to Communication Service Providers.

The Statute's plain language shows that the Statute applies only to records maintained by communication service providers—not retailers, like Target. The Statute defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record.

AZ ST § 44-1376. That Target is not a communication service provider is made clear by the definition's reference to "the nature of the *communication service* provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features." *Id.* (emphasis added). Further, the records included in this definition, such as "installation address" and "length of service" of a subscriber, are the types of information that only a provider of communication services, such as a telephone carrier, would maintain.[5]

---

[5] This reading of the Statute is supported by other statutes governing communication service records, such as the Arizona Eavesdropping and Communication Act ("ECA"). AZ ST § 13-3018. The ECA provides a procedure for criminal prosecutors to subpoena

14

Plaintiff's construction of the Statute appears to read the word "service" out of the definition of a "communication *service* record," in contravention of basic canons of construction. *See BLK III, LLC v. Skelton*, 252 Ariz. 583, 587, 506 P.3d 812, 816 (Ct. App. 2022), *as amended* (Feb. 17, 2022) (noting that "each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant"). Target is not, nor is it alleged to be, a provider of communication services. Accordingly, the Statute does not apply and Plaintiff has failed to state a claim.

### 5. Plaintiff Does Not Sufficiently Allege That Target Collected "Communication Service Records."

Plaintiff alleges that Target procured Plaintiff's "communication service records" by capturing "time logs of email access, logs of associated email addresses, logs of email client type, logs of email path data, logs of recipient location, logs of IP address, logs of email forwarding data, and logs of device information." (Compl. ¶¶ 57-59.) However, the plain language of the Statute does not support this, and no court has interpreted the Statute in the manner Plaintiff does.

The Statute's definition of "communication service record," as set forth above, does not, on its face, include any of the information described by Plaintiff, nor can such inclusion reasonably be inferred from the plain language of the Statute. As this Court has noted, "[i]t is a canon of statutory construction that words should not be added to or read into a statute." *Ctr. for Biological Diversity v. Norton*, 240 F. Supp. 2d 1090, 1099 (D. Ariz. 2003), *amended in part*, No. CV 01-409 TUC DCB, 2003 WL 22849594 (D. Ariz. Feb. 19, 2003).

Because there is no case law interpreting the meaning of "communication service record"—and very little case law applying the Statute generally—case law analyzing the

---

"communication service records." It contains an identical definition of "communication service record," and explains that a prosecutor may obtain a communication service record by issuing a subpoena "to a communication service provider," and that such records would be "used and kept by the communication service provider." *Id.* § 13-3018(B), (D)(1). The ECA makes clear that "communication service records" are records held by communication service providers. Accordingly, the same phrase used in the Statute cannot have the much broader meaning Plaintiff seeks. *See Maricopa County v. Barkley*, 812 P.2d 1052, 1056 (Ariz. App. 1990).

15

collection of similar information under analogous statutes is helpful. For example, in *Williams v. What If Holdings, LLC*, a defendant was accused of using software "to record [the plaintiff's] keystrokes and clicks on the website, while also recording data regarding the date and time of her visit, her browser and operating system, and her geographic location." No. C 22-03780 WHA, 2022 WL 17869275, at *1 (N.D. Cal. Dec. 22, 2022). The plaintiff asserted that this data collection "violated the wiretapping provision of the California Invasion of Privacy Act," among other laws. *Id.* In dismissing the complaint, the court found that the defendant did not unlawfully intercept a communication because, "[a]s the website owner, What If was the intended recipient of plaintiff's communication. Parties to a conversation cannot eavesdrop on their own conversation[.]" *Id.* at *2. The same result should follow here, where Target is alleged to have captured data regarding Plaintiff's interactions with an email sent ***from Target*** to Plaintiff.

In *In re Nickelodeon Consumer Privacy Litig.*, the Third Circuit affirmed the dismissal of an action where children plaintiffs alleged "that the defendants, Viacom and Google, unlawfully collected personal information about them on the Internet, including what webpages they visited and what videos they watched on Viacom's websites" in violation of the federal Wiretap Act and Video Privacy Protection Act ("VPPA"), among other statutes. 827 F.3d 262, 267 (3d Cir. 2016). As to the Wiretap Act claim, the court agreed with the trial court's finding that no interception occurred because the defendants, like Target here, were a party to all communications with the plaintiffs. *Id.* at 274-76. As to the plaintiffs' VPPA claim, the court held that regardless of whether certain static digital identifiers could reveal an individual's video-watching habits, it did "not think that a law from 1988 can be fairly read to incorporate such a contemporary understanding of Internet privacy." *Id.* at 290. The court found that the plaintiff's allegations that Google could assemble these static identifiers to unmask the identity of children was "simply too hypothetical to support liability under the" VPPA. *Id.*

Here, as in *Nickelodeon*, Plaintiff attempts to contort a 2007 telecommunications statute to fit 2024 technology. Arizona's legislature has had seventeen years to amend the

117507690.1
117507690.1

Statute to encompass the types of data collection Plaintiff alleges, and it has not. Thus, a plain reading of the text of the Statute, read alongside case law analyzing the collection of similar information, shows that Plaintiff failed to state a claim under the Statute.

### 6. Plaintiff Has Not Pled Facts Showing he is a "Customer."

The Statute's civil cause of action extends only to "a *customer* whose communication service records . . . were procured, sold or received in violation of this article." A.R.S. § 44-1376.04(A) (emphasis added). Despite alleging that he subscribed to Defendants' email list, Plaintiff fails to allege that he is or was a Target "customer" or that he bought products from Target. Because the Complaint lacks facts supporting Plaintiff's eligibility to sue under the Statute, the Complaint must be dismissed.

### D. If the Statute Applies to Plaintiff's Claim, it is Preempted by the CAN-SPAM Act.

Even if Plaintiff's expansive reading of the Statute were correct, and the Statute does expressly regulate the practices surrounding commercial marketing emails, the Statute would be preempted under the CAN-SPAM Act. The CAN-SPAM Act was enacted to regulate "commercial electronic mail on a nationwide basis[.]" 15 U.S.C. § 7701(b)(1). It also expressly "supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages . . . ." 15 U.S.C. § 7707(b)(1).[6] Thus, if Plaintiff is correct and the Statute expressly applies to routine marketing emails, his claim is preempted and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Target respectfully requests that the Court dismiss the Complaint with prejudice.[7]

---

[6] While the CAN-SPAM Act enumerates narrow exceptions to this express preemption, *see id.* at § 7707(b)(2), none of the exceptions apply.

[7] The prior amendment of Plaintiff's Complaint did not correct the deficiencies set forth in Target's initial Motion to Dismiss. Accordingly, the dismissal of Plaintiff's Complaint should be with prejudice as granting Plaintiff leave for further amendment would be futile. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

117507690.1
117507690.1

DATED this 11th day of September 2024.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/ Jefferson T. Collins
Jefferson T. Collins
Jennifer M. Martin
40 N. Central Avenue, Suiter 2700
Phoenix, Arizona 85004

FREDRIKSON & BYRON, P.A.

Leah C. Janus (pro hac vice)
Natasha T. Robinson (pro hac vice)
Mattison M. Kim (pro hac vice)
60 South Sixth Street, Suite 1500
Minneapolis, MN  55402-4400

***Attorneys for Defendant Target Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September, 2024, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Christina Ciesla

117507690.1
117507690.1